UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALISON RENEE MARSHALL,

    Defendant.
_____/

No. 1:22-cr-7

Hon. Hala Y. Jarbou
United States District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Alison Renee Marshall and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.     <u>Defendant Agrees to Plead Guilty</u>. The Defendant agrees to plead guilty to the Indictment, charging tampering with a consumer product, in violation of Title 18, United States Code, Section 1365(a)(4).

2.     <u>Defendant Understands the Crime</u>. In order for the Defendant to be guilty of violating Title 18, United States Code, Section 1365(a)(4), the following must be true: (1) the Defendant tampered with a consumer product, its labeling, or its container; (2) the consumer product affected interstate commerce; (3) the Defendant acted with reckless disregard for the risk that another person would be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk.

3.     <u>The Defendant Understands the Penalty</u>. The statutory maximum sentence that the Court can impose for each violation of Title 18, United States Code, Section 1365(a)(4), is the following: ten years' imprisonment; a three-year period of supervised release; a fine of

$250,000.00; and a mandatory special assessment of $100.00. The Defendant agrees to pay the special assessment at or before the time of sentencing unless the Defendant affirmatively demonstrates to the Court that she lacks the ability to pay.

4. <u>Mandatory Restitution (MVRA)</u>. The Defendant understands that she will be required to pay full restitution as required by law.

5. <u>Factual Basis of Guilt</u>. The Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

> In July and August of 2020, the Defendant worked as a registered nurse in the Interventional Radiology Unit of a Kalamazoo hospital. On a number of occasions during this time, the Defendant accessed a Pyxis machine maintained in Unit and removed liquid fentanyl vials. In order to disguise this conduct, the Defendant recorded her access of the Pyxis drawer containing the fentanyl by utilizing the "remove cancel function" indicating access to the drawer but no removal of any controlled substances. In order to use the fentanyl herself, the Defendant removed the metal caps on the vials containing the fentanyl, inserted a syringe through the rubber stopper on the vials, removed the fentanyl, replaced the fentanyl with saline solution utilizing a syringe, glued the metal caps on the vials, and returned the vials to the Pyxis drawers.

> On or about August 20, 2020, a different registered nurse in the Interventional Radiology Unit removed a vial of fentanyl from the Pyxis machine and observed what he believed to be some suspicious adhesive on the cap of the vial. The nurse informed the hospital pharmacy and "wasted" the suspicious vial by disposing of it. The next day, on August 21, 2020, the same nurse administered fentanyl to patient J.P., a 72-year-old woman with metastatic adenocarcinoma of the lungs who was undergoing a percutaneous chest tube placement. This procedure involved insertion by radiological guidance of a needle, followed by a wire and pigtail catheter into the pleural space between the layers of J.P.'s lungs to drain any liquid that may have been causing her shortness of breath. Because the invasive nature of this procedure, the patient typically receives both a local anesthetic and intravenous fentanyl.

> When the liquid fentanyl administered to J.P. appeared not to alleviate the pain from this procedure, the nurse obtained a second vial of fentanyl and administered it. The nurse reported that fentanyl administered to a patient did not appear to have any effect, and the Hospital pharmacy initiated an investigation. During this investigation, a second nurse in the Interventional Radiology Unit reported observing vials of fentanyl that had caps that

appeared suspicious. A staff pharmacist examined the vials of fentanyl in the Unit's Pyxis machines where he found four vials of fentanyl with caps that were glued shut. The staff pharmacist also examined the Pyxis records that demonstrated the Defendant utilized the "remove cancel function" 14 times from July 21, 2020, through August 20, 2020.

On August 24, 2020, the Defendant met with hospital representatives and admitted diverting fentanyl eight times in July and August of 2020 for her own use. The Defendant described how she extracted the fentanyl using a syringe, replaced it with saline solution on a number of occasions, glued the caps on the vials, and returned the vials to the Pyxis drawers. When asked about whether she considered the impact on the patients, the Defendant stated that she did think of the patients and hoped the patients would get the real medication and that her saline would be wasted.

Five vials of fentanyl removed from the unit on August 21, 2020, were submitted to the FDA laboratory for testing. Each of these vials contained multiple puncture holes in the rubber stoppers. Two of the vials contained liquid at 3% of the manufacturer's declared concentration of fentanyl, two vials contained less than 3% of the manufacture's declared concentration of fentanyl, and the concentration in the fifth vials could not be determined.

The fentanyl vials utilized by hospital's Interventional Radiology Unit, including the vials removed and tested, were distributed by Hospira in Lake Forest, Illinois. As a result of the removal of the suspicious vials from the Pyxis machines in the Interventional Radiology Unit, the hospital ordered additional fentanyl vials.

6. The United States Attorney's Office's Agreements.

    a. Acceptance of Responsibility. The U.S. Attorney's Office agrees not to oppose the Defendant's request for a two-level reduction of her offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to the Defendant's request if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

b.  <u>Non-Prosecution Agreement</u>.  Upon the acceptance of the plea and sentencing on the charge in the Indictment, the U.S. Attorney's Office agrees not to bring additional criminal charges against the Defendant in the Western District of Michigan relating to the tampering with consumer products and arising out of her conduct while working in the Kalamazoo hospital in July and August 2020 provided that the conduct is disclosed to the Government by the Defendant or her attorney prior to the date of this agreement.  The Defendant shall remain subject to prosecution for any criminal activity she has failed to disclose to the Government prior to the date of the agreement.  This promise of non-prosecution shall not include crimes of violence, if any, or criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

7. <u>The Sentencing Guidelines</u>.  The Defendant understands that, although the United States Sentencing Guidelines (the "Guideline") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the Defendant.  The Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.  The Defendant understands that the Defendant and the Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed.  The Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement.  The Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of her guilty plea.

8. <u>Sentencing Guideline Stipulations</u>.  The parties stipulate, pursuant to USSG §6B1.4 and based upon information known to the Government at this time, to the following:

   a. A victim of the offense was vulnerable pursuant to USSG §3A1.1(b).

   b. No victim sustained serious bodily injury pursuant to USSG §2N1.1(b)(1)(A).

   c. The Defendant abused a position of trust and used a special skill in a manner that significantly facilitated the commission or concealment of the offense pursuant to USSG §3B1.3.

The Defendant understands that neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Both the Defendant and the U.S. Attorney's Office are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and all factual misstatements relating to the calculation of the sentence. The Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, the Defendant cannot, for that reason alone, withdraw her guilty plea. Both parties reserve the right to seek any sentence within the statutory maximum and to argue for any other variances and departures.

9. <u>Waiver of Constitutional Rights</u>.  By pleading guilty, the Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the Defendant would have had the following rights:

a. The right to the assistance of counsel, including, if the Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the Defendant.

b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove the Defendant guilty beyond a reasonable doubt.

c. The right to confront and cross-examine witnesses against the Defendant.

d. The right, if the Defendant wished, to testify on the Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e. The right not to be compelled to testify, and, if the Defendant chose not to testify or present evidence, to have that choice not be used against the Defendant.

f. By pleading guilty, the Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

10. Waiver of Other Rights.

a. Waiver. In exchange for the promises made by the government in entering this plea agreement, the Defendant waives all rights to appeal or collaterally attack the Defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

b. Exceptions. The Defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

i. the Defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

ii. the Defendant's sentence was based on an unconstitutional factor,

such as race, religion, national origin, or gender;

   iii. the district court incorrectly determined the Sentencing Guidelines range, if Defendant objected at sentencing on that basis;

   iv. the Defendant's sentence is above the Sentencing Guidelines range as determined by the court;

   v. the guilty plea was involuntary or unknowing;

   vi. an attorney who represented the Defendant during the course of this criminal case provided ineffective assistance of counsel.

If the Defendant appeals or seeks collateral relief, the Defendant may not present any issue in the proceeding other than those described in this subparagraph.

  c. <u>Hyde Waiver.</u> The Defendant acknowledges, by her voluntary admissions of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and she hereby disclaims and waives any right to make any claim for attorney fees.

  11. <u>The Court is not a Party to this Agreement.</u> The Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw her guilty plea, and she will remain bound to fulfill all her obligations under this agreement. The Defendant understands that no one—not the prosecutor, the Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence the Defendant will receive, except that it will be within the statutory maximum.

12. <u>This Agreement is Limited to the Parties</u>. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan and cannot bind any other federal, state, or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by the Defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

13. <u>Consequences of Breach</u>. If the Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the Defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The Defendant further agrees to waive and forever give up her right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

14. <u>This is the Complete Agreement</u>. This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

15. **Deadline for Acceptance of Agreement.** If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by April 22, 2022, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

MARK A. TOTTEN
United States Attorney

5/5/22
Date

RAYMOND E. BECKERING III
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

5-3-22
Date

ALISON RENEE MARSHALL
Defendant

I am Alison Marshall's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

5/3/2022
Date

ROBERT J. ANDRETZ
Attorney for Defendant

9