UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                          No.: 1:22-CR-07

v.

                                                    Hon. Hala Y. Jarbou
ALISON RENEE MARSHALL,               Chief U.S. District Judge

        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

### Introduction

    The defendant Alison Marshall faces sentencing as a result of stealing liquid fentanyl from the interventional radiology unit of the Kalamazoo hospital where she worked in the summer of 2020. To cover up this theft and her personal abuse, she compounded this misconduct by replacing the fentanyl with saline solution in vials that she knew would be distributed to patients to alleviate pain during invasive surgical procedures. As a trained healthcare professional, Marshall understood that her tampering with this medication could – and at least in one case did - result in critically ill patients receiving diluted fentanyl, which was neither effective nor sterile, exposing patients to possible infection as well as unnecessary pain. The court's sentence should appropriately punish this conduct and deter other health care professionals from breaching the inherent trust that comes with their professional licenses and responsibilities.

**Argument**

In August 2020, a registered nurse (not the defendant) in the interventional radiology unit of a hospital in Kalamazoo, Michigan, removed a vial of liquid fentanyl for use during a procedure. The nurse observed some suspicious adhesive on the cap of the vial and discarded the vial. The following day, the same nurse assisted in a percutaneous chest tube placement procedure for a 72-year-old female cancer patient to remove fluid accumulation around her lungs. This procedure required the insertion, by radiological guidance, of a 19-gauge needle and pigtail catheter into the space between the layers of lungs. The nurse observed that the patient did not receive the expected pain relief from the liquid fentanyl that was administered at the outset of the procedure. The nurse procured a second dose of fentanyl and relieved the patient's pain. Following the procedure, the nurse reported this second suspicious incident to hospital staff. (ECF 24, PageID.70, Final PSR, ¶¶ 7 and 8.)

A subsequent investigation by the hospital's staff pharmacist revealed that several vials of fentanyl still in the unit's Pyxis machines had caps that appeared glued back on the vials. Hospital records revealed that Marshall checked out doses of fentanyl for patients approximately a dozen times in July and August of 2020 but then canceled the transactions and purportedly returned the fentanyl back into the interventional radiology unit's inventory. FDA laboratory examination of the vials with the glued caps revealed needle punctures consistent with tampering, and laboratory testing demonstrated that the vials were substantially diluted, containing 3% or less of the amount of reported fentanyl. (ECF 24, PageID.70-71, Final PSR, ¶¶ 9 and 13.)

On August 24, 2020, Marshall met with hospital representatives and admitted diverting fentanyl for her own use on eight occasions by removing vials of injectable fentanyl from the Pyxis machines, extracting the fentanyl using syringes, replacing the medication with saline solution,

gluing the plastic tampering caps back onto the vials, and returning the vials back into the unit's Pyxis machines. Given her use of needle syringes to remove fentanyl and to use herself, the defendant also agreed to undergo blood testing to confirm that she did not have any transmissible diseases. The following day, the hospital terminated her. (ECF 24, PageID.70-71, Final PSR, ¶10.) As a result of the same allegations, the Michigan Board of Nursing suspended her nursing license for several months, issued a $750.00 fine, and placed her on probation. (ECF 24, PageID.71, Final PSR, ¶12.)

Marshall reported that her abuse of pain medication stemmed from Oxycodone and Noro prescriptions she received in early 2020, consistent with recent studies demonstrating that abuse of post-surgical pain medication is a much greater risk than medical practitioners previously appreciated. (ECF 24, PageID.79, Final PSR, ¶58.) [1] As part of her licensing monitoring agreement, Marshall has been in active compliance including random drug testing and participation in a recovery program. (ECF 24, PageID.79, Final PSR, ¶59.) She has also maintained full-time employment as a registered since her license suspension ended.

While the general nature of Marshall's tampering falls within the "mine run" of cases, there are a number of factors that the presentence report has legitimately recognized as possible grounds for a variance or departure. First, unlike many similar cases, the defendant immediately acknowledged her culpability when confronted by the hospital and agreed to blood testing. This allowed the hospital to quickly resolve the source of the adulterated medication and confirm that no other serious patient harm existed. Second, given the keen observations of the other nurse in interventional radiology unit, the hospital was able to account for almost all of the vials that were

---

[1] https://ihpi.umich.edu/news/u-m-launches-effort-prevent-surgery-related-opioid-addiction-across-michigan

adulterated and there was fortunately only one confirmed patient who suffered any temporary pain and risk of infection. Third, it appears that this conduct was an aberration from Marshall's personal and professional history and something related to post-surgical opioid addiction.

## Conclusion

Patients must rely on the integrity of our health care professionals. Here, the defendant exposed vulnerable patients to possible infection and unnecessary pain and suffering. Theft of controlled substances for personal abuse is criminal conduct, most often handled on the state level. However, medical professionals and others who put vulnerable patients at risk by stealing controlled substances and then tampering with such medications in order to cover such theft should expect a federal investigation, a federal prosecution, and some term of federal incarceration.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Dated: September 14, 2022     /s/ *Raymond E. Beckering III*
RAYMOND E. BECKERING III
Assistant United States Attorney
United States Attorney's Office
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404
ray.beckering@usdoj.gov